## AMERICAN TUBE WORKS *vs.* BOSTON MACHINE COMPANY.

Suffolk.   Nov. 12, 1884. — Feb. 27, 1885.   FIELD, DEVENS, & COLBURN, JJ., absent.

A vote of a corporation to issue "special stock," at a meeting called, under the St. of 1870, c. 224, § 25, to consider whether the corporation will issue "preferred stock," is invalid.

A vote of a corporation to issue special stock, passed at a meeting held under the Pub. Sts. c. 106, § 42, is invalid, if the record of the meeting fails to show that three fourths of the general stockholders voted for such issue.

A holder of special stock of a corporation, which is illegally issued, cannot, by estoppel or otherwise, become a member in respect to such shares.

Special stock in a corporation was illegally issued to a creditor of the corporation, who subsequently received dividends on the stock.  The corporation, at two subsequent meetings, attempted, without success, to cure the defect, and to make a valid issue of stock.  Twenty-seven months after the first issue, and two months after the last attempt to cure the defect, the creditor, shortly before the insolvency of the corporation, gave notice that he rescinded the contract, and tendered back the dividends received.  *Held,* that the election to rescind was exercised within a reasonable time ; and that the creditor could prove the amount of his debt against the insolvent estate of the corporation.

APPEAL from a decree of the judge of insolvency, disallowing the plaintiff's claim against the estate of the defendant corporation.   Trial in the Superior Court, without a jury, before *Bacon,* J., who found for the plaintiff, and reported the case for the determination of this court, in substance as follows :

Both parties are manufacturing corporations, established under the general law.   In December, 1880, the defendant owed the plaintiff, for borrowed money, $12,800, the debt bearing interest at the rate of seven per cent.   On December 30, 1880, the defendant corporation, by a vote of three fourths of its general stockholders, voted to issue special stock to the amount of $100,000, to be subject to redemption at par after July 1, 1885, on which a fixed half-yearly dividend of three and one half per cent was to be paid, and authorized the president and treasurer to issue certificates for said stock, in which should be expressed the amount of dividend to be paid, and the date after which the stock was redeemable.   The notice, dated December 23, of said meeting of December 30, was for a meeting "to consider whether the corporation will issue $100,000 of preferred stock." No subscription was ever made to this special stock, nor any

assessment ever voted or made thereon, nor time fixed at which it should be paid in.

On January 21, 1881, the plaintiff surrendered to the defendant the evidences of its indebtedness of $12,800, and paid to it $7200 in money, and received from it two certificates, one for twenty-six shares, the other for fourteen shares, each certifying that the plaintiff was the proprietor of the number of shares specified " in the special stock of the Boston Machine Company, subject to the by-laws, the same being transferable by assignment in the books of the corporation upon a surrender of this certificate. Said special stock is redeemable at par after the first day of July, 1885, and is entitled to a fixed half-yearly dividend of three and one half per centum."

The plaintiff entered its debt against the defendant upon its books as paid, and opened an account of special stock in the Boston Machine Company, to which it charged the stock at $20,000, and in which it subsequently credited the dividends received upon the stock as interest upon special stock. When the plaintiff took these certificates, there was nothing said as to whether the full amount of $100,000 special stock had been taken or subscribed. The plaintiff's treasurer, who took and paid for the certificates, testified that when he did so he supposed that the whole amount of the special stock had been taken or subscribed for, but that shortly after he ascertained it had not been, and that he supposed it would not be binding on the plaintiff unless it was so taken.

On July 1, 1881, the plaintiff took its dividend of three and one half per cent upon its $20,000 of special stock. On January 1, 1882, it took a similar dividend, and on July 1, 1882, it took another similar dividend, knowing at each of these times that the whole amount of the special stock had not been subscribed for or taken.

A special meeting of the stockholders of the defendant company was called for June 8, 1882, " to consider the question whether the corporation will issue special stock to the amount of two fifths of its actual capital, pursuant to the provisions of section 42 of chapter 106 of the Public Statutes of this Commonwealth." The record showed that this meeting was adjourned to June 9, and that at this adjourned meeting, there being

present more than three fourths of the general stockholders, it was voted " that special stock of this corporation be issued to the amount of two fifths of the actual capital, in shares of the par value of five hundred dollars each, which shall be subject to redemption by the corporation at par on and after the first day of July, A. D. 1885, and on which a semiannual dividend of three and one half per cent shall be paid." The vote also authorized the president and treasurer to issue certificates for said stock, in which should be expressed the amount of dividend to be paid, and the time when the stock was redeemable; and provided that certificates issued under the former vote of the corporation of December 30, 1880, might be exchanged for certificates issued under this vote, if the holders so desired. On July 12, 1882, at the suggestion of the defendant, the plaintiff surrendered the certificates received by it on January 21, 1881, and received from the defendant a certificate for forty shares, similar in form to the certificates surrendered.

Only $51,500 of said special stock was ever taken or paid in, and this fact appeared by the reports of the treasurer of the defendant corporation at its annual meetings. It was therein called "preferred stock," and the only other stock mentioned was the capital stock.

A special meeting of the stockholders of the defendant corporation was called on February 24, 1883, to consider and vote upon the following matters: "1. Whether the company will call in the balance not already called in of the special stock voted to be issued by the company. 2. Whether the company will increase its capital stock by the issue of a further amount of special stock, and to what amount." The record of this meeting stated the names of the stockholders present, and that the following votes were passed: " Voted, that the matter contemplated by the first article of the call be laid on the table. Voted, that special stock of the corporation be issued in shares of the par value of five hundred dollars each, which shall be subject to redemption by the corporation at par on and after the first day of July, A. D. 1885, and on which a semiannual dividend of three and one half per cent shall be paid, to an amount which shall make the entire special stock, including that already authorized, $130,000. The president and treasurer are authorized

to issue certificates for said stock, in which shall be expressed the amount of dividend to be paid, and the time when the stock is redeemable ; and any stock not taken by the stockholders, after notice to be given under the provisions of section 37 of chapter 106 of the Public Statutes, may be disposed of by the directors at not less than par value thereof, as they may determine."

On January 1, 1883, the plaintiff received a dividend of three and one half per cent upon its special stock. On March 2, 1883, the defendant corporation failed, and suspended payment. On March 28, 1883, a special meeting of the stockholders of the defendant was held, at which the assistant treasurer (the treasurer being in Europe) of the plaintiff attended, but did not vote on any question, and, on being asked, said he was not there to vote, and it was voted to go into insolvency, and the president was authorized to file a petition for that purpose.

The first attempt of the plaintiff to rescind or to avoid the effect of the issue of the certificates of stock to it was made on April 28, 1883, when it delivered the following communication (signed in its corporate name by its assistant treasurer) to the defendant's treasurer, addressed to the defendant corporation :

" Pursuant to vote of the directors of the American Tube Works, I hereby notify you that the issue and transfer of special stock of the Boston Machine Company and of certificates therefor to the American Tube Works, and payment therefor, are disavowed and rescinded by the American Tube Works, and I demand the return of the money and other considerations paid and given therefor, and the said stock and each and every share and certificate thereof, and all sums paid by the Boston Machine Company as interest, and dividends on each and every share of said stock, are hereby rendered back upon the return of the money and other considerations paid and given therefor."

On May 12, 1883, the defendant was duly adjudged insolvent upon its own petition. The plaintiff subsequently presented its claim against the estate, and it was disallowed by the judge ; and the plaintiff appealed.

*J. H. Benton, Jr.*, for the defendant.

*E. R. Hoar & G. W. Estabrook*, for the plaintiff.

C. ALLEN, J. The issue of special stock was invalid. This is a peculiar kind of stock, now distinctly provided for by statute,

but unknown to the general laws of the Commonwealth until 1855. Its characteristics are, that it is limited in amount to two fifths of the actual capital; it is subject to redemption by the corporation at par after a fixed time, to be expressed in the certificates; the corporation is bound to pay a fixed half-yearly sum, or dividend upon it, as a debt; the holders of it are in no event liable for the debts of the corporation beyond their stock; and the issue of special stock makes all the general stockholders liable for all debts and contracts of the corporation until the special stock is fully redeemed. Sts. 1855, *c.* 290; 1870, *c.* 224, §§ 25, 39, *cl.* 4. Pub. Sts. *c.* 106, §§ 42, 61, *cl.* 3. *Williams* v. *Parker*, 136 Mass. 204, 207.

Preferred stock, as usually understood, is something quite different from this. Special statutes have from time to time authorized particular corporations to issue preferred stock, with various special provisions; as, for example, Sts. 1853, *c.* 1; 1855, *c.* 143; 1877, *c.* 170; 1878, *c.* 138; 1882, *c.* 177. But authority to issue preferred stock is not conferred in express terms by any general statutes. Corporations have sometimes, no doubt, at the outset of their organization, assumed the authority to divide their capital stock into two classes, preferred and common; and when each stockholder subscribes for and takes his shares of common stock with full knowledge and consent, there is perhaps no legal objection to this course. The question is a different one, whether a corporation, with an existing capital stock all subscribed for and taken, can increase its capital by the issue of further shares which shall be preferred, and if so under what circumstances this may be done, and whether by a mere majority or only by a unanimous vote of the existing stockholders.

This question need not be considered here; though it has arisen elsewhere. *Kent* v. *Quicksilver Mining Co.* 78 N. Y. 159. It is sufficient for the present purpose to call attention to the marked distinction between preferred stock as usually understood, and special stock as authorized by legislation in this Commonwealth. Special stock could only be issued by the Boston Machine Company by a vote of three fourths of its general stockholders, at a meeting duly called for the purpose. St. 1870, *c.* 224, § 25. The meeting of December 30, 1880, at which the

original vote to issue special stock was passed, was called to consider whether the corporation would issue $100,000 of preferred stock. This call did not authorize a vote to issue special stock, and the vote was accordingly invalid. See *People's Ins. Co.* v. *Westcott*, 14 Gray, 440; *Wiggin* v. *Lowell Freewill Baptist Church*, 8 Met. 301, 310; *In re Bridport Old Brewery Co.* L. R. 2 Ch. 191.

A new meeting was called in due form for June 8, 1882, at an adjournment of which a vote was passed for the issue of special stock; but the difficulty with this meeting is, that it does not appear by the record that three fourths of the general stockholders voted for such issue, although more than that number were present at the meeting. It is essential to the validity of the vote that this fact should appear of record. It is contended by the defendant, that the presumption is that all the shareholders who were present voted for the issue of the special stock, since nothing appears to the contrary. But in several cases quite similar to this, so far as the principle is concerned, it has been held otherwise. *Morrison* v. *Lawrence*, 98 Mass. 219. *Andrews* v. *Boylston*, 110 Mass. 214. *Judd* v. *Thompson*, 125 Mass. 553. It was required by statute that this corporation should have a clerk, who should be sworn, and who should record all votes in a book to be kept for that purpose. St. 1870, c. 224, §§ 15, 18. Pub. Sts. c. 106, §§ 23, 26. No authority has been cited to us, in this State or elsewhere, supporting the view of the defendant. The strongest case that we have seen, looking in that direction, *Commonwealth* v. *Woelper*, 3 S. & R. 29, is quite distinguishable, both on the ground assigned by Chief Justice Tilghman, that inasmuch as no meeting for the transaction of ordinary business could be held without the presence of two thirds of the ministers, elders, and church-wardens, who constituted the corporation, and inasmuch as the custom had been not to mention how many attended, the record that, after due invitation, " the ministers, elders, and church-wardens met" was sufficient to show that two thirds of them met; and especially on the ground assigned by Gibson, J., who presided at the trial, that it was not open to the defendant, under the particular circumstances of that case, to take the objection. In the present case, the record of the vote is entirely consistent with the construction that the vote was passed merely

by a majority of those who attended the meeting. The vote at the third meeting, at which the subject of special stock was acted on, is open to the same objection as that at the second meeting.

There was no other action at any of the meetings of the corporation which could have the effect to make the special stock valid by way of ratification. There is indeed no reference to special stock in the reports of the treasurer, but only to " capital stock " and " preferred stock." It is difficult to see how any action at a corporate meeting can have a greater effect by way of ratification than a direct vote passed at such meeting would have ; and a direct vote at any such other meeting than those hereinbefore referred to would have been invalid, for want of due notice that the subject would be acted on, as well as for want of a record showing a vote of three fourths of the stockholders.

The issue of special stock being invalid, and being open to repudiation by the corporation itself, or by dissenting stockholders, the plaintiff had an election to rescind the contract under which the special stock was taken, and to be restored to its original position. *Allen* v. *Herrick*, 15 Gray, 274, 284. It was not bound by any estoppel. In all the cases which have come under our observation where one has been held to be deemed a stockholder by estoppel, there has been a legal creation of the capital stock. Such was the case in *Turnbull* v. *Payson*, 95 U. S. 418. But where the issue of the shares is illegal, where no sufficient steps have been taken to authorize the creation of the capital stock, where a person has acted and been treated as a stockholder in respect of shares which the company had no power to issue, and where the shares cannot legally exist, the person taking them cannot, by estoppel or otherwise, become a member in respect to them. Lindley on Part. 134. Moreover, in the case before us, the defendant corporation has no equity to insist that the plaintiff corporation should be treated as a stockholder. It failed to issue the number of shares contemplated by its vote. It has been in no respect misled by any act of the plaintiffs. It has not changed its position for the worse. It has had the plaintiff's money, and has simply paid what is equivalent to interest upon it. No rights of third parties have intervened. The consideration upon which the plaintiff parted with

its money has failed. The defendant corporation issued special stock, which was at the time supposed by both parties to be valid, but which was invalid. Under such circumstances, an action lies to recover back the money. *Dill* v. *Wareham*, 7 Met. 438. *Earle* v. *Bickford*, 6 Allen, 549.

The election by the plaintiff to rescind the contract was exercised within a reasonable time. Formal notice was given on April 28, 1883, or about twenty-seven months after the first issue of special stock to the plaintiff. This special stock might have been made good, so that the plaintiff would be content or be bound to keep it. The defendant twice endeavored without success to effect this result. It has suffered nothing from the delay. The notice of rescission was sufficient in form, and the offer to return all considerations received was also sufficient. Indeed, since the money received by the plaintiff as interest or dividends was not equal to the amount of money which the plaintiff was and now is entitled to receive, no offer to return the same was necessary. *Montgomery* v. *Pickering*, 116 Mass. 227, 231.                                    *Judgment affirmed.*