## HALLETT v. NEW ENGLAND ROLLER-GRATE CO.

(Circuit Court, D. Massachusetts. December 4, 1900.)

No. 883.

1. CORPORATIONS—SUBSCRIBER TO STOCK—MISTAKE AS TO FOREIGN LAWS.

The rule that a subscriber to the stock of a corporation of a foreign state is presumed to assent to the laws of such state governing the corporation is not so rigid as to debar him from relief against the corporation, when no interests of creditors or the public intervene, where by reason of the issuance of the stock to him for less than its par value the certificate

is void under such laws, of which fact he was ignorant, and he therefore received no consideration for the money paid.

2. SAME—ISSUANCE OF STOCK IN VIOLATION OF STATUTE—RIGHT OF PURCHASER.
Pub. St. N. H. 1891, c. 149, § 9, which prohibits a corporation from disposing of its stock, with a stated exception, at less than its par value, and chapter 273, § 11, which provides that, if any corporations issue certificates of stock without receiving full payment at the par value of the shares, such certificates shall be void, and the officers who shall take part in such issuance shall be subject to fine and imprisonment, are not to be regarded so much as declaring any general public policy, as establishing regulations governing corporations for the protection of their stockholders and creditors; and, while an action to enforce an executory contract in violation of such provisions cannot be maintained, the penalties which follow their violation where the contract has been executed are only those prescribed by the statute itself. A nonresident who purchases and pays for stock in a corporation of the state at less than its par value, and receives a certificate therefor, in good faith and in ignorance of such provisions, is not precluded by the statute from maintaining an action to recover the money paid, after his certificate has been declared void by the courts.

3. SAME—ACTION BY SUBSCRIBER TO RECOVER MONEY PAID—LACHES.
Plaintiff purchased and paid for stock in a corporation of another state, which was issued to him at a price below its par value in violation of the laws of such state, and the certificate was some years afterwards declared void by its courts. Held, that while plaintiff's ignorance of the statutes, as those of a foreign state, gave him the right to rescind the purchase as having been made under a mistake of fact, if such right was promptly asserted, he was bound to use reasonable diligence to ascertain the law governing his relations to the corporation, and a delay of eight years before demanding a return of the money paid constituted such laches as would bar him from exercising his option to rescind, and would defeat an action at law for its recovery.

At Law. Action to recover money paid.

Williams & Copeland, for plaintiff.
I. R. Clark, for defendant.

PUTNAM, Circuit Judge. The defendant is a corporation organized under the laws of New Hampshire. The plaintiff resides in Massachusetts. On April 8, 1891, he entered into a contract with the defendant, covering several matters, to which I need not refer at length, save only as to one. He agreed to contribute $3,000 to the stock of the defendant corporation, at $6 per share. The par of the stock was $10 per share. This sum he paid, through its proper representative, into the treasury of the corporation at or about the date of the contract; and in return the corporation issued him its certificate for 500 shares, on the face of the certificate nonassessable. The purpose of the parties, undoubtedly, was to issue 500 shares of stock, free from assessments, in return for $3,000, being a deficiency from the par of the stock of $2,000.

All these transactions were at Boston, in Massachusetts, and at that time the plaintiff was a resident of Massachusetts; and, according to well-settled rules, he was not holden generally to know the laws of a foreign state. For this purpose, New Hampshire was a foreign state. So far as he and this transaction are concerned, the general rule is that a mistake as to the laws of New Hampshire would be a mistake of fact, from which he would be entitled to relief, the same as from any ordinary mistake. It is true that it is now well settled

that a person who takes shares of stock issued by a corporation, although of a foreign state, is presumed to assent to the law of the corporation in the state where the corporation was organized. For certain purposes he is bound to know that law. This presumption and obligation are not so rigid as to lead necessarily to unjust results. They relate more particularly to such matters as affect the relations of a corporation to its creditors, and to certain other matters in which individuals or the public have a special interest. They do not go so far as to entitle this defendant to retain the money of the plaintiff, obtained under a transaction occurring in Massachusetts, at a time when the plaintiff was a resident of Massachusetts, for which, by reason of ignorance on his part of the laws of New Hampshire, the consideration fails, leaving the corporation in possession of the plaintiff's money without having given any equivalent for the same, or for any part thereof, so long as no interests intervene except those of the corporation and the plaintiff. In the present case it is not shown that the creditors of the corporation, or the state, or the public have any interest in the question under consideration; so that, so far as this part of the case is concerned, the issue is whether, under the circumstances stated, as between the plaintiff and the corporation, no other person being interested, the corporation, having received the plaintiff's money, and having given certificates of stock in return therefor which are of no value to the plaintiff, can hold what it has received.

Pub. St. N. H. 1891, c. 149, § 9, provides that no corporation shall dispose of any of the shares of its capital stock at a price less than the par value thereof, with an exception not involved here. Chapter 273, § 11, provides that, if a corporation issues certificates when the par value of the shares represented by the certificates has not fully been paid into its treasury, all such certificates shall be void, and the directors, officers, or other agents of the corporation who shall take part in the issue of any such certificates shall be fined or imprisoned, or both. The statute, by its letter, declares only the certificates void, yet there can be no question that, so far as obtaining any valuable interest is concerned, this whole transaction was void; so that the plaintiff has not received what can be regarded as anything substantial in return for his $3,000.

In December, 1898, in Kimball v. Grate Co., 69 N. H. 485, 45 Atl. 253, the supreme court of New Hampshire explicitly, and on an issue made, declared the precise certificates involved in this suit void, and determined that the holder of them was not entitled to vote at any meeting of the corporation. Previous to this decision the plaintiff had sold this stock to two gentlemen by the name of Rider. One of the Riders, in testifying in this case, admits sufficient to charge them with knowledge of the fact that the stock was issued to the plaintiff at $6 per share, and that the par was $10. Nevertheless the Riders were nonresidents of New Hampshire, and the transaction between them and the plaintiff took place in Massachusetts; so that the Riders were entitled to be regarded as acting under a mistake of fact. Meanwhile, however, each of the Riders had been elected and acted as directors of the corporation, and they had received on this stock

one dividend of $500, which they still retain. Promptly after the decision in Kimball v. Grate Co., the Riders demanded of the plaintiff that he should cancel the transaction and return the amount which they paid him for the stock. The plaintiff was not bound to await litigation, as he was clearly holden to cancel the transaction; and he did so, and repaid the Riders by his note, which, so far as this case is concerned, is to be regarded as cash. Meanwhile the stock had become mixed in with other stock, and certificates had issued covering both; but the Riders, before this suit was begun, delivered the entire mass of certificates to the plaintiff, with authorization to him to have retransferred to him the 500 shares involved. On request made therefor by the plaintiff before this suit was commenced, the treasurer of the corporation refused to do this, on the ground that he and the corporation were under an injunction with reference thereto. Consequently the certificates which include the 500 shares have been deposited in the registry of this court during this trial, and are here impounded; and the Riders during the trial indorsed them all in blank, and have expressly consented that the court shall make such disposition of the 500 shares involved in this suit as its result may require.

Prior to bringing this suit no tender was made to the corporation, except as above stated. As the 500 shares are practically worthless, no tender was required; and it is sufficient that the certificates have been brought into court, and may be surrendered to the corporation, so that the corporation may thus be protected against any possible estoppel by reason of their being outstanding in the hands of innocent parties. These facts reinstate the plaintiff to the same position as though he had never disposed of the stock and clear the way of all preliminary questions.

The defendant maintains that the issue of the stock was against the declared public policy of New Hampshire, and that therefore no action can be maintained in any way arising out of it. In regard to this particular the plaintiff is undoubtedly chargeable, as a stockholder, with the operation of the laws of New Hampshire in a suit in the district of Massachusetts, or in the courts of the state of Massachusetts, precisely as he, or a resident of New Hampshire, would be in a suit brought in the district of New Hampshire, or in the courts of that state. We do not withdraw our determination that, in order that the plaintiff should have a right merely to rescind the transaction, and merely to recover the amount he paid for the stock, it should be held that ignorance on his part of the laws of New Hampshire may amount to a mistake of fact for certain purposes. So far as such ignorance amounts to mistake of fact, and is important with reference to relief against mistakes, it must have the same effect in all tribunals of every jurisdiction; but neither this mistake nor any other will permit any court anywhere to ignore the public policy of New Hampshire when it comes to actually enforcing the rights of the parties with reference to a corporation organized by that state.

There is, of course, a mass of authorities which would seem to sustain the defendant's position, so far as it rests on the question of

public policy depending on the statute referred to. Some of these are explained in Spring Co. v. Knowlton, 103 U. S. 49, 26 L. Ed. 347. That case, however, does not go to the extent claimed by the defendant, as will appear by the expressions at the foot of page 57, 103 U. S., and page 350, 26 L. Ed., and the top of page 58, 103 U. S., and page 350, 26 L. Ed. The court did not determine that there was any question of public policy involved, but it proceeded to dispose of the case on the hypothesis that there might be.

The better view of the law is that, there being no moral turpitude involved, a plaintiff ought not to be the entire loser, and a defendant the entire gainer, out of a prohibited transaction. The provisions of the Public Statutes of New Hampshire must be regarded not so much as declaring any general public policy as establishing regulations pertaining to corporations, intended for the protection of their stockholders and creditors. They come in like the regulations of the statutes of the United States affecting national banking associations, which, as is now well settled, do not always impair contracts which have been executed in violation of them. Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Thompson v. Bank, 146 U. S. 240, 13 Sup. Ct. 66, 36 L. Ed. 956. There is nothing from which it can be justly inferred that it is the intention of the statutes of New Hampshire to give a corporation receiving payment of less than the par of its stock the benefit of the entire amount thus received, to the detriment of the party who pays it, whether a nonresident or not, without any moral turpitude on his part, or without any real intention to defraud. The entire penalties intended to be imposed are those we have stated; that is, that the party making the payment shall fail to be recognized as a stockholder, and the certificates be declared void, and that the officers of the corporation shall be subject to punishment. In this respect the case is substantially like that of the overcertification of checks, referred to in Thompson v. Bank, at page 250, 146 U. S., page 69, 13 Sup. Ct., and page 960, 36 L. Ed., where the court said that the very fact that a statute is enacted punishing criminally an officer, clerk, or agent, improperly certifying a check, shows that the law intended to impose only the penalties specifically named in it. In the absence of some great public injury to be prevented, or of moral turpitude, the just rule is that a prohibition by a statute intends to impose no penalties beyond what the statute expressly enacts, although, of course, no court will give aid in directly carrying out a transaction which the law forbids.

There is a broad distinction between a suit which seeks to enforce a contract prohibited by statute, while it is entirely executory, and one arising out of a condition of things, where one party or the other has had the full advantage to be derived therefrom. For example, the supreme court would undoubtedly refuse to enforce a wholly unexecuted contract which contemplated a loan by a national banking association based on real-estate security, while in Bank v. Matthews, already referred to, it enforced such a loan, including a foreclosure of the borrower's mortgage, after the borrower had received the funds which his note represented. So in the case at bar the fact that this court would have refused to have caused to be executed the contract

of April 8, 1891, while it was entirely executory, would not prevent us from doing justice with reference to the $3,000 paid in pursuance thereof.

These suggestions also dispose of the proposition made by the defendant growing out of the fact that the contract of April 8, 1891, contained a stipulation for services to be rendered by the plaintiff for an annual salary, and some other stipulations. Under some circumstances, some of these stipulations would be contrary to public policy. Whether they are so or not in the present case does not clearly appear. In any event, they are not so involved with the plaintiff's claim in suit, which is only for a refund of the $3,000 as money had and received by the defendant under a mistake, that they cannot be severed from it, and that severing them could do injustice to the defendant.

Even if the case were not fully covered by the principles of the decision of the supreme court with reference to statutory enactments relating to national banking associations, it would come within the mild rules of Pullman's Palace-Car Co. v. Central Transp. Co., 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108, and of Aldrich v. Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611, in which the court refused to allow defendants to retain the value of what they had received in violation of regulations affecting corporations, rather than within McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117, where the entire transaction involved moral turpitude and an intended fraud on the public. In Aldrich v. Bank, at page 636, 176 U. S., page 505, 20 Sup. Ct., and page 618, 44 L. Ed., the court laid down the broad rule that there is nothing in the acts of congress authorizing or permitting a national bank to appropriate and use the money or property of others for its benefit without liability for so doing. Looking at the similar question, of rescission, and of recovering only what the defendant corporation received without giving any consideration therefor, the question of mistake of fact which we have considered does not seem important, in connection with the rules of Pullman's Palace-Car Co. v. Central Transp. Co. and of Aldrich v. Bank, except so far as it relieves the plaintiff from every suggestion of moral guilt, and of any intent to defeat the laws of New Hampshire. We therefore conclude that the plaintiff had fundamentally a right to recover from the defendant the $3,000 paid into its treasury, on surrendering the certificates which he received in exchange therefor.

The difficulty in the way of this suit arises from the delay between the transaction of April 8, 1891, and the time of making a claim for a refund. We must recognize the fact that, during that period, the condition of the defendant corporation may have essentially changed. For aught we know, the shares of the defendant corporation may now be of nominal value, so that, if we should allow the plaintiff to recover the entire $3,000, an injustice might be done the defendant, perhaps equal to that which would have been done the plaintiff if he had promptly sought to rescind the transaction and recovery had been refused him. Natural equity forbids that, after a lapse of so many years, a transaction shall be rescinded without taking into account the possibility of the changed condition of both parties to it.

While the plaintiff's ignorance of the statutes of New Hampshire in April, 1891, is to be excused as a mistake of fact, he was, nevertheless, bound to use some diligence in ascertaining what his relations were to the defendant corporation. Laches, although not so operative at law as in equity, cannot be disregarded when there has been a reasonable possibility of a substantial change in the status during a protracted delay. It is a rule of the common law that a party seeking to rescind a contract must do so within a reasonable time. In the present case, the time which has elapsed must be held unreasonable, and the fact that the matter as to which the plaintiff failed in ascertaining his rights relates to the statutes of a foreign state governing the defendant corporation, cannot be accepted by the law to excuse this delay. In this particular case the wisdom of this rule is illustrated by the fact that meanwhile those in privity with the plaintiff have received a considerable dividend on the shares in issue, and also presumably by virtue of this holding of stock, have acted as its officers and aided to control its affairs. We refer to this, however, not as fundamentally affecting the question, but as illustrating the justice of the rule which we are compelled to apply. The rule was distinctly recognized in American Tube-Works v. Boston Mach. Co., 139 Mass. 5, 29 N. E. 63, and it was affirmed in Banigan v. Bard, 134 U. S. 291, 295, 10 Sup. Ct. 565, 33 L. Ed. 932. So far as it refers to cancellations of stock, it ordinarily is applied with reference to the rights of creditors, but in Banigan v. Bard it is laid down as a universal rule. Under the circumstances, we must hold that the plaintiff has omitted for an unreasonable time to effectuate the rescission which must supply the basis for the present action, and that in view of his delay he has lost his right to recover the amount paid for the 500 shares of stock, which is the only right which could ever accrue to him at common law.

This, of course, would not interfere with his remedy at equity, which probably still remains. The mistake in the case at bar is one of the class against which equity could undoubtedly grant relief; and while equity would be prohibited by the plaintiff's laches, even more than the common law, from allowing him to rescind, yet it could do justice according to the existing circumstances. After proper prior proceedings by the present plaintiff, equity might aid him to demand certificates of stock equal at par to the amount which he paid into the treasury of the defendant corporation, or to demand new certificates for the 500 shares on his making good the deficiency. The common law can only enforce contracts as the parties have made them, or rescind them. It cannot make new contracts; and, while equity cannot directly impose on parties engagements which they have not entered into, although it may rectify errors contrary to substantial intent, yet it can lay such terms on one party or the other as may be necessary to effectuate equitable results.

There must be judgment for the defendant.