## KIRK OIL CO. v. BRISTOW.

No. 19347. Opinion Filed Jan. 19, 1932.

Rehearing Denied Feb. 9, 1932.

Champion, Champion & Fishl and Rainey, Flynn, Green & Anderson, for plaintiff in error.

George Trice, Denver N. Davison, and George N. Otey, for defendant in error.

SWINDALL, J. This cause comes to this court from the district court of Carter county. Okla., wherein F. E. Bristow was plaintiff and Kirk Oil Company, a corporation, was defendant. Suit was instituted by said plaintiff against said defendant to recover a balance alleged to be due said plaintiff in the sum of $14,441.66 under a verbal contract of employment with said defendant. The cause was tried to a jury and judgment rendered in favor of the plaintiff in the sum of $12,374.45, and from this judgment in favor of plaintiff the defendant appealed to this court to reverse the action of the trial court. The parties will be referred to as they appeared in the trial court. The plaintiff in his petition alleges in substance that on July 1, 1917, he was employed by the defendant in the capacity of managing officer of defendant upon an agreed salary of $2,500 per annum; that he continued under said contract of employment to perform

the duties of managing officer and executive employee of defendant at said salary until May 31, 1923; that on said day and date, by virtue of an agreement between the plaintiff and the board of directors of the defendant, the agreed salary that he was to receive after said date of May 31, 1923, was the sum of $2,100 per annum, and that he continued in said capacity until October 31, 1924; that the employment mentioned and referred to existed under and by virtue of a verbal contract and authorization by the board of directors of the defendant; that the defendant accepted the services and acquiesced in the employment of the plaintiff during the period of time hereinbefore referred to; that plaintiff was paid and credited upon his account the sum of $3,675 and that there is a balance due to plaintiff on said account in the sum of $14,441.66.

The defendant filed an answer and cross-petition denying that the plaintiff was employed by the defendant to act in the capacity of managing officer of said defendant, on or about the 1st day of July, 1917, or in any other capacity at an agreed salary of $2,500 per annum; and specifically denies that the plaintiff performed any services whatever for defendant prior to the 31st day of May, 1923, and specifically denies that the defendant is indebted in any manner for any services rendered by the plaintiff at any time or upon their account whatsoever.

Said defendant, for further answer and by way of cross-petition, alleges that on or about the 31st of May, 1923, at the time of holding the annual stockholders' and directors' meeting of the defendant corporation, J. E. Bristow, the president of said defendant corporation, and a brother of the plaintiff herein, and who had theretofore been acting in the capacity of managing officer of said defendant corporation, was re-employed in said capacity at a salary of $350 per month; that at said meeting and at the time of fixing the salary of said J. E. Bristow, it was agreed between all the parties that the said J. E. Bristow should divide his salary with the plaintiff herein; that the plaintiff should thereafter be permitted to draw the sum of $175 per month as salary for services to be thereafter rendered by the plaintiff to this defendant in the capacity of secretary and treasurer and that said J. E. Bristow should thereafter continue as general managing officer of said corporation at a salary of $175 per month. Said defendant further says that thereafter the plaintiff was paid $175 per month by the defendant until about the ____ day of November, 1924, at which time the plaintiff

sold his holdings in the defendant corporation and resigned as secretary and treasurer and that during said time plaintiff overdrew his salary in the sum of $350; also that plaintiff on or about the 28th day of June, 1919, borrowed the sum of $2,000 from defendant, and executed his note therefor in favor of the defendant; that there is a balance due in the sum of $920.75 on said note, and defendant prays judgment against said plaintiff on its cross-petition in the sum of $1,538.-93. Said defendant for further answer filed an amendment to its answer alleging that the contract is utterly void and without any force and effect for the reason that the same was not made in the manner and form as required by law; that there was not a quorum of the board of directors present at the time said contract was alleged to have been made and that the same was not legal and binding, and for the further reason that the same falls within the statute of frauds, and as a further defense that if the plaintiff ever had any cause of action against said defendant, that said cause of action long since has been barred by the 2, 3, and 5 year statute of limitation of the statutes of Oklahoma, which is specifically pleaded as a defense to plaintiff's cause of action. The defendant timely demurred to the petition of plaintiff, which was by the court overruled and exception saved. At the commencement of the trial defendant objected to the introduction of evidence, which objection was by the court overruled and exception allowed. The defendant demurred to plaintiff's evidence and moved for a directed verdict. Each were denied. The trial resulted in a verdict and judgment for plaintiff for the sum hereinbefore stated.

A motion for new trial was filed setting forth 23 separate grounds occurring at the trial as affecting substantially the material rights of the defendant, and in addition to the irregularities said motion complains of the bias and prejudice on the part of the trial court toward counsel and the action of the court during the progress of the trial. This motion for new trial was overruled and defendant sets forth 14 separate assignments of error as grounds for reversing the action of the trial court. In the brief of defendant, assignments of error are grouped under nine propositions.

It appears, however, that the real cause of complaint on the part of the defendant is that: (1) The court erred in overruling the demurrer of the defendant to the petition of plaintiff; (2) defendant's objection to introduction of evidence; (3) there was no competent evidence establishing a valid and enforceable contract; (4) the court erred

in overruling the demurrer of defendant to plaintiff's evidence; (5) that plaintiff's claim, if any, was barred by the statute of limitations; and (6) the court erred in refusing to direct verdict in favor of defendant.

The evidence shows that F. E. Bristow and J. E. Bristow were brothers; that in 1917 said brothers entered into a partnership for the purpose of dealing in oil and gas leases and promoted the Kirk Oil Company; that said brothers were the principal and managing officers of said corporation. The plaintiff testified and the records show that F. E. Bristow was the first president, and J. E. Bristow was the first secretary of said company; that they turned their leases to the company and received therefor in equal amounts a total of 20,000 shares of stock in said company. The records of the first meeting of stockholders and of the first meeting of the directors of the company, which meetings were held at Ada, Okla., in March, 1917, show that F. E. Bristow and J. E. Bristow had each subscribed to 12,500 shares of stock; that one A. Lee Battenfield was an original subscriber in the amount of 5 shares; that he was represented at the stockholders meeting by proxy through J. E. Bristow; that F. E. Bristow, J. E. Bristow, and P. W. Samuels were the first directors. Apparently there were no other stockholders or directors in the company at that time. The plaintiff further testified that it was agreed at the first meeting of the directors at Ada, Okla., in 1917, that he was to receive a salary of $2,500 per year, none of which was to be "taken down" until the company "got on a paying basis"; that J. E. Bristow was to work on the same basis; that he was to have charge of the field work, and that J. E. Bristow was to sell the stock and keep the books of the company. Plaintiff further testified that he and his brother continued as managing officers of said company until April, 1923, at which time an agreement was reached between them and the stockholders that their salaries would be $175 per month each, that this was understood and intended to be a reduction of their former salaries of $2,500 per year. The plaintiff testified and the records show that he and his brother were the only persons present at the first meeting of stockholders and the first meeting of directors. The records show that there is nothing in the minutes of this first meeting relating to any salary being fixed for plaintiff or for any one else. The evidence shows that sometime thereafter, in 1918, at a stockholders meeting, in Coalgate, Okla., the question was discussed in reference to the salaries which were being drawn, but no

action was taken by the stockholders fixing plaintiff's salary or with reference to it. There is evidence to the effect that plaintiff stated at that meeting that no one was drawing a salary except his brother, J. E. Bristow. This plaintiff denies. There is evidence to the effect that it was made clear to the stockholders at said meeting that plaintiff was drawing a salary, and there is evidence contradicting this proposition.

The plaintiff relied upon the oral agreement with the company which he claims was made at the first meeting of the directors at Ada, in 1917, and upon his rendition of services thereunder, and their acceptance by the company from that date until April, 1923.

The case was tried to a jury, and the instructions of the court taken as a whole make it clear that the case was submitted upon the theory that in order for the plaintiff to recover the salary in the amount claimed he must have entered into a contract with the defendant company as alleged, and that if he did enter such oral contract at the first meeting in Ada, in 1917, with the company acting through himself and his brother, J. E. Bristow, and did acts for the company under such contract, which the company accepted, he would be entitled to recover on such contract.

We do not deem it necessary to discuss the several assignments of error, as in our opinion the case is controlled by certain provisions of our Code, and we shall pass to a consideration of the statutory provisions. Section 5349, C. O. S. 1921, provides that:

"All corporations for profit are required to keep a record of all their business transactions; a journal of all meetings of their directors, members or stockholders, with the time and place of holding the same, whether regular or special, and, if special, its object, how authorized, and the notice thereof given. The record must embrace every act done, or ordered to be done, who were present and who were absent; and, if requested by any director, member or stockholder, the time shall be noted when he entered the meeting or obtained leave of absence therefrom. On a similar request, the ayes and nays must be taken on any proposition, and a record thereof made. On a similar request, the protest of any director, member, or stockholder, to any action or proposed action, must be entered in full; all such records to be open to the inspection of any director, member, stockholder, or creditor of the corporation."

Section 5328 provides that:

"Every corporation formed under this chapter must, within one month after filing articles of incorporation, adopt a code of by-

laws for its government not inconsistent with the laws of the United States or of this state. The assent of stockholders representing * * * a majority of the members, if there be no capital stock, is necessary to adopt by-laws, if they are adopted at a meeting called for that purpose; and in the event of such meeting being called, two weeks' notice of the same, by advertisement in some newspaper published in the county in which the principal place of business of the corporation is located, or if none is published therein, then in a paper published in an adjoining county, must be given by order of the acting president. The written assent of the holders of two-thirds of the stock, or of two-thirds of the members, if there be no capital stock, shall be effectual to adopt a code of by-laws without a meeting for that purpose."

And section 5329, C. O. S. 1921, provides:

"A corporation may, by its by-laws, where no other provision is specifically made, provide:

"First. The time, place, and manner of calling and conducting its meetings.

"Second. The number of stockholders or members constituting a quorum.

"Third. The mode of voting by proxy.

"Fourth. The time of the annual election for directors, and the mode and manner of giving notice thereof.

"Fifth. The compensation and duties of officers.

"Sixth. The manner of election and the tenure of office of all officers other than the directors; and,

"Seventh. Suitable penalties for violations of by-laws, not exceeding, in any case, $100 for any one offense."

Section 5330 provides:

"All by-laws adopted must be certified by a majority of the directors and secretary of the corporation, and copied in a legible hand in some book kept in the office of the corporation, to be known as 'The Book of By-Laws,' and no by-laws shall take effect until so copied, and the book shall then be open to the inspection of the public during office hours of each day except holidays. The by-laws may be repealed or amended or new by-laws may be adopted at the annual meeting, or at any other meeting of the stockholders or members, called for that purpose by the directors, by a vote representing two-thirds of the subscribed stock, or by two-thirds of the members; or the power to repeal and amend the by-laws and to adopt new by-laws may, by a similar vote at any such meeting, be delegated to the board of directors. The power, when delegated, may be revoked by a similar vote at any regular meeting of the stockholders or members. Whenever any amendment or new by-law is adopted it shall be copied in the book of by-laws with the original by-laws, and immediately after them, and shall not take effect until so copied. If any by-law be repealed, the fact of the repeal, with the date of the meeting at which the repeal was enacted, shall be stated in the said book, and until so stated the repeal shall not take effect."

Section 5334 provides that:

"The corporate powers, business, and property of all corporations formed under this chapter must be exercised, conducted, and controlled by a board of not less than three nor more than eleven directors, to be elected from among the holders of stock; or where there is no capital stock, then from the members of such corporation. Directors of corporations for profit must be holders of stock therein in an amount to be fixed by the by-laws of the corporation. Directors of all other corporations must be members thereof. Unless a quorum is present and acting, no business performed or act done is valid as against the corporation. Whenever a vacancy occurs in the office of director, unless the by-laws of the corporation otherwise provide, such vacancy must be filled by an appointee of the board."

Section 5335 provides that:

"Immediately after their election, the directors must organize by the election of a president, who must be one of their number, a secretary and treasurer. They must perform the duties enjoined on them by law and the by-laws of the corporation. A majority of the directors is a sufficient number to form a board for the transaction of business, and every decision of a majority of the directors forming such board, made when duly assembled, is valid as a corporate act."

The statute is clear that all corporations for profit are required to keep a record of all their business transactions; a journal of all meetings of their directors, members or stockholders, with the time and place of holding the same, whether regular or special, and, if special, its object, how authorized, and the notice thereof given. The record must embrace every act done, or ordered to be done, who were present and who were absent. The corporation could by its by-laws provide the compensation and duties of its officers. The plaintiff was a director and at one time secretary and treasurer, and as a director it was his duty to see the record was kept, and as such secretary it was his duty to keep the records, and if he willfully or negligently failed to perform the duties enjoined upon him by law, he cannot profit by reason of his failure to discharge a duty the law required him to perform. We are here dealing with corporations for profit generally and not corporations for profit governed by laws relating specifically to such corporations.

The record in this case shows the wisdom

of the Legislature in providing for a record to be kept.

Our attention has been called to decisions from various states to sustain the contention of the plaintiff that he may recover upon an oral agreement or contract, but they announce the general rule that the failure or neglect of the proper officer of a corporation to make and keep a record of the acts and resolutions of the corporate body, or of its board of directors, cannot affect the rights of third persons dealing with the corporation, and the general rule relative to employees of the corporation who are not directors therein and as such principal managing officers, and such decisions do not shed any light upon the case under consideration. However, it seems to be settled law in this state that directors of a corporation for profit cannot recover compensation for services rendered the corporation as officers in the absence of authority shown by corporate records for payment. The plaintiff relies principally upon the case of Spaulding v. Enid Cemetery Ass'n, 76 Okla. 180, 184 P. 579. The facts in that case are entirely different from the case at bar. The corporation there involved was a cemetery association authorized by our statute, and the statute provided the salary of the secretary should be fixed by the by-laws, and it does not appear in the records that the association was a corporation for profit.

In 14 C. J. 920, par. 1435, we find this language:

"The minutes of a stockholders' meeting are the best evidence of its proceedings, hence, the keeping of complete minutes of all proceedings of such meetings is the better practice. However, unless required by statute or charter, the keeping of minutes is not essential to the validity of the acts of the meeting, and such acts may be proved by parol when it appears that no minutes were kept, or that minutes which were made have been lost."

The rule announced in Corpus Juris seems to prevail in states where the statute does not require minutes to be kept, but the contrary rule prevails where minutes are required to be kept: American Tube Works v. Boston Machine Co. (Mass.) 29 N. E. 63; Morrison v. Lawrence, 98 Mass. 219; Andrews v. Boylston, 110 Mass. 214; Judd v. Thompson, 125 Mass. 553; Higgins v. Reed, 8 Iowa, 298; Barnes v. Lynch, 9 Okla. 189, 59 P. 1007. In commenting upon cases in states where the statute does not require a record of the proceedings of the directors and stockholders to be kept, Mr. Chief Justice Marshall, in his dissenting opinion in the case of Bank of United States v. Dandridge, 12 Wheaton, 64, 6 L. Ed. 562, uses this very forceful language:

"The plaintiff is a corporation aggregate; a being created by law; itself impersonal, though composed of many individuals. These individuals change at will; and, even while members of the corporation, can, in virtue of such membership, perform no corporate act, but are responsible in their natural capacities, both while members of the corporation, and after they cease to be so, for everything they do, whether in the name of the corporation or otherwise. The corporation being one entire impersonal entity, distinct from the individuals who compose it, must be endowed with a mode of action peculiar to itself, which will always distinguish its transactions from those of its members. This faculty must be exercised according to its own nature.

"Can such a being speak, or act otherwise than in writing? Being destitute of the natural organs of man, being distinct from all its members, can it communicate its resolutions, or declare its will, without the aid of some adequate substitute for those organs? If the answer to this question must be in the negative, what is that substitute? I can imagine no other than writing. The will to be announced is the aggregate will. The voice which utters it must be the aggregate voice. Human organs belong only to individuals. The words they utter are the words of individuals. These individuals must speak collectively to speak corporately, and must use a collective voice. They have no such voice, and must communicate this collective will in some other mode. That other mode, as it seems to me, must be by writing."

However, the majority opinion in that case holds that where the statute requires the records to be kept in writing the statute must be complied with. This court in McCulloch v. Perry, 150 Okla. 203, 1 P. (2d) 170, in the first syllabus paragraph held that:

"In the absence of authority shown by corporate records for payment, of services, officers of a corporation cannot recover compensation for services rendered the corporation as such officers."

The syllabus in that case seems to be in harmony with the law as found in section 5349, supra, and is binding on us in this case.

Having arrived at the conclusion that a corporation for profit must speak by its record in so far as its business transactions with its directors are concerned and that its records must embrace every act done, directors of a corporation for profit cannot recover compensation for services rendered corporation as officers in absence of authority shown by corporate records for payment. As the case stands, therefore, there is no

legal evidence that the plaintiff was ever employed or any salary agreed to be paid him by the corporation. If the records of a corporation for profit fail to show a by-law or resolution or minutes fixing the salary or compensation of a director therein as a managing officer of such corporation was duly adopted as required by the statutes of this state, parol evidence is not admissible to show that it was.

For the reasons above stated, we are of the opinion that the demurrer of the defendant to the petition of plaintiff should have been sustained and that there was no competent evidence upon which to base the verdict of the jury or the judgment entered thereon, and the cause is therefore reversed and remanded to the district court of Carter county, with directions to vacate the judgment entered in said cause and grant a new trial and then sustain the demurrer of the defendant to the petition of the plaintiff and then dismiss said action at the cost of the plaintiff.

LESTER, C. J., and RILEY, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. HEFNER, J., disqualified and not participating. CLARK, V. C. J., not participating.