## BANIGAN v. BARD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF CONNECTICUT.

No. 1354. Submitted January 8, 1890. — Decided March 17, 1890.

An officer in a corporation who is leading in its management, who is active
in securing the passage of a resolution authorizing an issue of preferred
stock, who subscribes for such stock and pays his subscription and
takes his certificate and votes upon it at shareholders' meetings for
over two years, and induces others to take such stock, cannot, when the
company becomes insolvent, recover back the money paid by him on his
subscription, on the ground that the statutes of the State only authorized
an issue of general shares.

THE case is stated in the opinion.

Mr. *Tilton E. Doolittle* for plaintiff in error.

Mr. *Jeremiah Halsey* for defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United
States for the District of Connecticut. The suit was brought
by Charles Bard, receiver of the Hayward Rubber Company,
which was a corporation organized under the laws of the
State of Connecticut, and located in the town of Colchester in
the county of New London. Being in an insolvent condition
its affairs were placed in the hands of said Bard as receiver
for the purpose of winding it up. Bard brought this suit in
his character of receiver, in the Superior Court of New Lon-
don County, and, on the application of Banigan, it was re-
moved into the Circuit Court of the United States for the
District of Connecticut. The case was heard there by the
court without the intervention of a jury, upon a stipulation
by the parties that this should be done.

There is filed in the record what purports to be a finding of
facts and opinion of the court, 39 Fed. Rep. 13, in which the

opinion and the statement of the evidence are mingled together in a way which it is difficult to separate, and which, if there were any objection to it, might not be found in accordance with sections 649 and 700 of the Revised Statutes of the United States. But as there does not seem to be any controversy about the special finding of facts, and as there is a bill of exceptions in the case which very fairly presents the only question at issue, we proceed to examine into it.

It appears that the Hayward Rubber Company prior to the year 1879 had been a profitable concern and paid large dividends, its last being made in 1881. Thereafter its business deteriorated and became unprofitable. Its capital stock was $400,000, and the par value of its shares was $25 each. In January, 1883, the stockholders, in endeavoring to secure some competent person to oversee and direct the management of its business, entered into negotiation with defendant, Banigan, who was president and general agent of the Woonsocket Rubber Company, and who was a well-known and successful manufacturer, the result of which was that they sold him four hundred shares of the stock at $12.50 per share. Mr. Banigan was appointed general agent of the company by the directors, and had full control of the manufactory, subject to their approval. He entered upon the oversight of the business, laid out and arranged for new buildings, bought new machinery, ordered new lasts, tools, rolls and cutting machinery, and had automatic sprinklers put in the mill, all at an expense of some $120,000.

In March, 1885, a committee of the directors, of which Mr. Banigan was a member, sent out a circular recommending an increase of the capital by the issue of preferred stock to the amount of $100,000, saying that it was advisable to have a unanimous vote in favor of the proposition, asking for proxies, and enclosing resolutions which were to be submitted to a stockholders' meeting, April 2, 1885. This meeting authorized the issue of preferred stock to the amount of $100,000, entitled to cumulative dividends at 8 per cent per annum, which issue took precedence of all dividends on the common stock and any future additions thereto. The order in regard

to the issue of preferred stock was passed by a unanimous vote of the shares present or represented at the meeting, being 13,400 shares. The whole number of shares was 16,000. Each stockholder had the privilege of subscribing to said stock in proportion to the number of shares of existing stock owned by him. Mr. Banigan subscribed for 702 shares of the preferred stock, and on April 2 paid the company for it $17,550, and received a certificate for said shares, which contained in substance the provisions of the resolution voted. Shares to the amount of $25,000 in all were subscribed for. Banigan voted upon this stock at one or two annual meetings, and on June 26 thereafter he wrote to Potter, Lovell & Co., note brokers of Boston, enclosing a statement of the company's affairs, and saying that it had arranged to issue $100,000 preferred stock, but "only one-quarter of it has yet been issued, which I have taken principally." No claim for repayment of this $17,550 was made until 1888. Meantime Mr. Banigan continued to be the general agent of the company until it went into the hands of a receiver on August 9, 1887.

A considerable part of the evidence recited in the statement of facts by the court, and in its opinion, had relation to the question of the claim for salary or compensation for services which Mr. Banigan set up as a set-off to his admitted indebtedness to the corporation, which latter amounted to $26,051.93, being the balance due on account of sales made by Banigan for the Hayward Rubber Company, as its agent. But as the allowance made by the court to the defendant for his salary, of $10,000, which with the interest amounted to $12,035.83, is not in controversy, because the plaintiff has taken no writ of error to that judgment, and as the sum of $26,051.93 is not in controversy by Banigan, no further consideration of those matters which relate to the salary is necessary, and the only question raised before us is that growing out of the refusal of the court to allow Banigan the sum of $17,550, which he had paid for the preferred stock of the company, as a set-off to his indebtedness, which is not otherwise disputed.

The court below upon that subject says: "The claim for $17,550 rests upon a question of law. The contention of defendant is that, inasmuch as the statutes of Connecticut simply allow a joint stock company to increase its capital stock, and the articles of association gave no authority to make preferred stock, it was beyond the power of the Hayward Rubber Company to create such a class of stock, and there was a total failure of consideration for the contract; that no estoppel can exist against the assertion of the invalidity of the stock; and that the defendant is entitled to recover the amount paid by him from the corporation."

The court then concedes the proposition that under the laws of Connecticut there was no authority to issue this preferred stock, but the judge further says: "I am not favorably impressed with the doctrine that, as against the assignee or receiver of an insolvent corporation, the owner of preferred stock, who has voluntarily subscribed and paid for it, for the purpose of promoting the scheme, and has received his certificate therefor, and the terms and conditions upon which the subscription was made have been fully complied with by the corporation, can recover the amount paid. In *Winters* v. *Armstrong*, 37 Fed. Rep. 508, Judge Jackson guards against such a broad principle, and it is not in accordance with the teaching of *Scovill* v. *Thayer*, 105 U. S. 143."

He also says that if defendant can recover an amount from the insolvent estate in a case where there is no claim of an unfulfilled condition, it must be upon a theory of the rescission of the contract, because the stockholder received nothing of value. He then adds: "This rescission must be made within a reasonable time. In this case Mr. Banigan paid for his stock April 2, 1885, and was still a stockholder when the receiver was appointed, August 9, 1887. I do not think that the preferred stockholder who voluntarily creates stock of this kind — for this Mr. Banigan virtually did — can hold it for twenty-eight months in the hope of dividends, and then, upon finding the company insolvent, come in as a creditor and receive back his money." He accordingly refused to allow the claim of Banigan for the money paid for this stock.

Perhaps but little can be added to what was said by the judge of the Circuit Court. It may be well to call attention a little more pointedly to the fact that when Mr. Banigan attempted, a year after the insolvency of the corporation, to return his stock and demand the money which he had paid for it, and at the time he filed this claim as a set-off in the Circuit Court, the corporation with which he dealt, and of which he was in effect the dominant spirit, had ceased to have existence for any other purpose than winding up its affairs, and all this matter had passed into the hands of the receiver, who represented especially the interests of creditors. It is in the face of the claim of these creditors, who must largely lose at any rate, that Mr. Banigan's claim is to be considered, and we are of opinion that, having received certificates for this stock, on which he voted in control of the company, and which increased his power in regard to that control, and having been the chief agent in causing the issue of this stock and giving it credit and currency by his actions, he cannot now be permitted to withdraw the money which he had paid, from the fund out of which these creditors are to be paid.

The force of this proposition is increased by the length of time elapsing between the payment of the money and the twenty-eight months in which Mr. Banigan held this stock, and voted upon it, and took the chances of its finally being a valuable investment. As its validity was a question of law, he must be presumed to have known it as well as anybody else. The cases of *Scovill* v. *Thayer*, 105 U. S. 143, and the very recent case of *Aspinwall* v. *Butler, Receiver of the Pacific National Bank of Boston*, 133 U. S. 595, while they are not so precisely analogous to the present case as to be considered conclusive of it, do yet enforce the general principle, that a person subscribing for stock under circumstances almost similar to the present, is bound for the obligations which the law imposes upon the holders of such stock for the benefit of the creditors of the insolvent corporation. We base our decision in the present case upon the view that Mr. Banigan, who was a controlling spirit in the Hayward Rubber Company, was active in passing the resolution which authorized the issue of

the stock and inducing other persons to take it, and in giving credit to the corporation on the ground that such stock had been taken and that he had actually paid his money in to the company, which its creditors had a right to consider as so much of its paid-up capital; that he held this stock for over two years, when the corporation was in struggling circumstances; that he voted upon it at two elections; and that he cannot now be permitted to recover back the money paid by him, from the effects of the insolvent corporation, which by law are devoted to the *bona fide* creditors of the institution.

*Judgment affirmed.*