## In re RICKSHAW, Inc.
No. 54988.

District Court, D. Massachusetts.
July 17, 1935.

[redacted]

Isadore Gelin, of Springfield, Mass., for trustee.

Thomas V. Moriarty, of Springfield, Mass., for Charles L. Ricketts.

BREWSTER, District Judge.

The referee's certificate brings up for review his order allowing a secured claim of Charles L. Ricketts for $20,793.33 and ordering the trustee to pay the creditor on this claim $20,308.92, the value of the security; and also from his order allowing an unsecured claim of $29,975.98 in favor of the said Ricketts.

The referee's orders are accompanied by a very complete statement of the facts established by the evidence adduced during extended hearings on the claims.

It appears from his report that numerous questions of law were raised during the course of the hearings before the referee. Of these questions I regard only two as sufficiently meritorious to warrant consideration. The facts necessary to a better understanding of these questions may be briefly summarized as follows:

The creditor, Ricketts, for a long time had been engaged in the business of manufacturing woolen goods in the town of Monson, and before the organization of the bankrupt corporation he and his brother were carrying on the business under the name of "Ricketts & Shaw." In November, 1932, they discontinued the operation of the mill, and Charles L. Ricketts had been charged with the duty of liquidating the partnership. He had intimated that he would sell the real estate and machinery for $10,000 cash. One, Costine, who had had experience in the manufacturing business, became interested in the proposition, and on May 4, 1933, submitted to Ricketts an offer to buy the assets of the business for $20,000, payable in notes aggregating that amount, secured by first mortgage on the assets acquired, the notes and mortgage to be given by a corporation to be formed by Costine. Following this proposition an agreement was entered into between Costine and one Olsen on the one part and Ricketts on the other, by which Ricketts agreed to sell the real estate with all appurtenant rights and all machinery, equip-

ment, the trade-mark "Rickshaw," and one G. M. C. truck. It was agreed that if Costine and Olsen formed a Massachusetts corporation with 500 shares without par value, with certain stipulated provisions in its by-laws, then the property would be conveyed to the corporation, and the consideration for the conveyance would be accepted from the corporation. It was stipulated in the agreement that the consideration for the transfer was to be $20,000 represented by three notes aggregating that amount, secured by mortgages covering the real and personal property conveyed to the corporation. Ricketts was to be treasurer of the corporation so long as the notes remained unpaid. He further agreed to advance not exceeding $10,000 at different times, at his discretion, to be used by the corporation in carrying on its business.

In accordance with this agreement, a corporation was organized under the laws of Massachusetts, by three incorporators of whom Costine was one. Ricketts was not an incorporator.

The fair value of the transferred assets at the time of the transfer was over $30,000. In order that the equity above the mortgages might be used for the purpose of paying in the capital stock, the property was transferred first to Costine, and from Costine to the corporation, 199 shares being issued for the real estate; 249 for the machinery; 5 for the equipment and tools; 45 for the trade-mark; and 2 shares for services, all but 2 shares being issued to Costine.

A special meeting of the incorporators was held after the incorporation, notice of which was waived in writing by all of the incorporators, which waiver was filed with the records of the meeting. At that meeting it was voted to accept the deed from Costine and to issue therefor the capital stock, as above stated, and, in addition, as further consideration for the property conveyed to it, to give Ricketts three notes, one for $5,000 payable in four months; one for $7,000 payable in six months; one for $8,000 payable in nine months, "and all secured by mortgages covering the property described in the deed and bills of sale."

By a separate vote the treasurer, Costine, was expressly authorized to execute, acknowledge, and deliver, on behalf of the corporation, a mortgage of $20,000 on the real estate acquired from the creditor. A similar vote authorized a chattel mortgage

on the personal property to secure the same notes. The records of the meeting do not state the number of shares voting in favor of the mortgages. All of the incorporators, who were then all the shareholders, were present at the meeting. The referee received evidence which established beyond a peradventure that the mortgages were authorized by the unanimous vote of all those present.

It was also voted to accept an assignment of the trade-mark and to issue 45 shares of stock for this trade-mark, and to assign the trade-mark to Ricketts as collateral security for the payment of the notes. After these votes were passed and the mortgages executed, two of the directors, who were incorporators, resigned, and Ricketts became then treasurer and director. Costine hypothecated his shares with Ricketts as further security for the notes of the corporation.

Following this meeting, Ricketts advanced money necessary for the prosecution of the business and turned over to the corporation, from time to time, certain raw materials and supplies. For these advancements, he received notes of the corporation, and the referee has found that when the corporation went into bankruptcy, the corporation was owing Ricketts for these advancements and materials $29,975.98, which he allowed as an unsecured debt.

■ The trustee raises the objection that the mortgages were not duly authorized. The referee has held otherwise. I concur with the referee. The trustee's contention is based upon an alleged noncompliance with the requirements of the Massachusetts law relative to a sale of all the assets of a corporation. This statute is section 42 of chapter 156 of the Massachusetts General Laws (Ter. Ed.) and provides that "every corporation may, at a meeting duly called for the purpose, by vote of two thirds of each class of stock outstanding and entitled to vote, * * * authorize the sale, lease or exchange of all its property and assets, including its good will, upon such terms and conditions as it deems expedient."

The referee has ruled that the mortgages were not within the purview of the statute. I see no error in this ruling notwithstanding McDonald v. First National Bank of Attleboro (C. C. A.) 70 F.(2d) 69. This, for two reasons. The mortgages were purchases—money mortgages given for assets acquired by the corporation at time of organization; and, secondly, they did not purport to cover all the assets or the good will of the corporation. The question is moot since the section was fully complied with, if it applied. All the stock outstanding and entitled to vote authorized the mortgages, and there was no error in admitting evidence to amplify or explain the records of the corporation so long as it did not tend to contradict those records. Andrews v. Inhabitants of Boylston, 110 Mass. 214; Commissioner of Banks v. Cosmopolitan Trust Co., 253 ·Mass. 205, 148 N. E. 609, 41 A. L. R. 658; Waters v. Gilbert, 2 Cush. (Mass.) 27; Handley v. Stutz, 139 U. S. 417, 11 S. Ct. 530, 35 L. Ed. 227; Cory v. Hamilton National Bank (C. C. A.) 31 F.(2d) 379.

■ I know of no rule of law that would warrant the court in denying to this creditor the security which he obtained for the notes given in consideration for property which he transferred through Costine to the corporation.

■ The second question presented is whether, upon the particular set-up resulting from the sale of the assets to the bankrupt corporation, the creditor comes within the doctrine laid down in cases like Albert Richards Co. v. The Mayfair, Inc., 287 Mass. 280, 191 N. E. 430; Centmont Corp. v. Marsch (C. C. A.) 68 F.(2d) 460; Page v. Arkansas Natural Gas Corp. (C. C. A.) 53 F.(2d) 27; Finch Co. v. Robie (C. C. A.) 12 F.(2d) 360.

The holding in these cases is that if one entirely controls the affairs of a corporation and owns a substantial part of it and furnishes the corporation money, the funds so advanced will be deemed a capital contribution. He cannot, under these circumstances, prove a claim in competition with other creditors of the corporation.

It is not difficult, however, to find distinctions between these cases and the case at bar. In the Mayfair Case, the corporation was organized by the alleged creditor in order that he might carry on his business under corporate form without any adequate capital contribution at the time of organization, and, moreover, he owned all of the stock of the corporation and would have been entitled to all the profits and earnings derived from the operation.

Here, the creditor did not organize the corporation. It was not organized in order that he might carry on his business under a corporate form, nor was he the own-

er of any of the stock of the corporation. It is true that he was treasurer and participated in the affairs of the corporation and that, while treasurer, he conducted from the same office some business connected with the liquidation of the partnership of Ricketts & Shaw. These facts do not, however, disqualify him as a creditor.

There are no findings of the referee that would warrant the conclusion that the arrangement between Ricketts and Costine was conceived, or carried out, with any intent to perpetrate a fraud upon creditors of the corporation. There are no grounds for ignoring the separate legal entity of the corporation, or for denying Ricketts' right to claim as a creditor for money advanced as a loan to the corporation and represented by its promissory notes. Wheeler v. Smith (C. C. A.) 30 F.(2d) 59; Berry v. Old South Engraving Co., 283 Mass. 441, 186 N. E. 601.

The referee's orders, therefore, are confirmed.